

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

2024 JAN -3 PM 3:17



CLERK

BY _____

_____ CLERK

|  |  |
|---|---|
| STATE OF VERMONT,<br><br>Plaintiff,<br><br>v.<br><br>3M COMPANY; EIDP, INC.; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; CORTEVA, INC.; and DUPONT DE NEMOURS, INC.,<br><br>Defendants. | Case No. 2:24-CU-19<br><br>**NOTICE OF REMOVAL**<br><br>JURY TRIAL DEMANDED |

Defendant 3M Company ("3M"), by and through undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Chittenden Superior Court of the State of Vermont to the United States District Court for the District of Vermont. 3M is entitled to remove this action based on federal officer jurisdiction under 28 U.S.C. § 1442(a)(1), as discussed below. As grounds for removal of this action, 3M states as follows.

## PRELIMINARY STATEMENT

1.      Plaintiff State of Vermont ("State") seeks to hold 3M and other Defendants liable based on alleged conduct in designing, manufacturing, marketing, and/or selling per- and polyfluoroalkyl substances ("PFAS"), such as perfluorooctanoic acid ("PFOA"), as well as PFAS-containing products. The State alleges that release of PFAS in Vermont has resulted in claimed contamination of the State's natural resources and property. Among the alleged PFAS sites that the State has put at issue in this case is the Rutland City landfill in Rutland, Vermont, which the State recently identified to be the basis for a claim in this case in responses that the State served on December 18, 2023 to 3M's Requests For Admission.

2.       As outlined immediately below and discussed more fully *infra* ¶¶ 19-20 and 28-31, in connection with recent events outside of this litigation, 3M recently learned that the State's claims for alleged PFAS contamination at the Rutland City landfill are subject to federal officer jurisdiction because at least some of the waste that the State claims to have been sent to the landfill from a former 3M Vermont facility derived from the manufacture of products in accordance with design specifications issued by the U.S. military ("MilSpec"). Thus, 3M is timely exercising its Congressionally-authorized right to remove this action under 28 U.S.C. § 1442(a)(1) at this time.

3.       As discussed further *infra* ¶ 12, Vermont State regulators outside of this litigation recently sent 3M a letter pursuant to 10 V.S.A. § 6615 ("6615 Letter"), notifying 3M that according to the State, at least some alleged PFAS at the Rutland City landfill purportedly may have resulted from 3M's manufacture of products at a facility near Rutland, Vermont, which was formerly operated by 3M from approximately 1955 to approximately 1975 (the "Rutland Facility"). Although the parties have been litigating the instant case in state court since 2019, the State has never in any pleading or discovery response in this case asserted any claim against 3M based on its operation of the Rutland *Facility*. However, following the issuance of its 6615 Letter, the State indicated in its December 18, 2023 response to a 3M Request For Admission that the State does intend to pursue claims related to the Rutland City *landfill*. As discussed further herein, that RFA response, combined with the State's allegations in the 6615 Letter about the Rutland Facility's sending of waste to the landfill and the fact that such waste plausibly derived in whole or in part from the manufacture of MilSpec products at the Rutland Facility, provide grounds for removal under 28 U.S.C. § 1442(a)(1).

4.       While investigating the 6615 Letter, 3M learned that it manufactured certain MilSpec products at the Rutland Facility. Specifically, from around 1973 to 1975, 3M

2

manufactured (among other things) copper-coated laminates at the Rutland Facility, and 3M manufactured those copper-clad laminates at the Rutland Facility in accordance with a federal military specification that required those laminates to be made with polytetrafluoroethylene ("PTFE"). According to the State, PTFE is a PFAS chemical.[1] Moreover, PTFE historically was manufactured using PFAS chemicals, including PFOA, a chemical the State has expressly placed at issue in this lawsuit. Given the 6615 Letter and the State's recent discovery response identifying the Rutland City landfill as the basis for a claim in this case, any potential PFAS-containing waste materials from the production of MilSpec-grade laminates at the Rutland Facility plausibly contributed to the alleged PFAS contamination at the Rutland City landfill for which the State now asserts a claim.

5.      Under Second Circuit law, when a plaintiff's pleadings and other papers in a case fail to clearly apprise the defendant of facts that create federal officer jurisdiction, the defendant may remove the case at any time by plausibly alleging those facts in its notice of removal. *See Cutrone v. Mortg. Elec. Regis. Sys., Inc.*, 749 F.3d 137, 143, 147 (2d Cir. 2014) ("If removability is not apparent from the allegations of an initial pleading or subsequent document, the 30-day clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3) [which govern the timeliness of removal] are not triggered. . . . Defendants are permitted to remove outside [the 30-day time periods] when the time limits of 28 U.S.C. § 1446(b) are not triggered."); *see also Agyin v. Razman*, 986 F.3d 168, 175 (2d Cir. 2021) ("Not only must the words of § 1442 be construed broadly but a court also must credit the defendant's theory of the case when evaluating the relationship between the defendants' actions and the federal officer" (internal quotation marks and brackets omitted)).

---

[1] *See, e.g.*, Vermont Dep't of Env't Conservation, *Regulation of PFAS in Public Drinking Water Systems in Vermont* at 11, https://dec.vermont.gov/sites/dec/files/PFAS/PFAS-Training-05.19.20.pdf.

3

6.      Because the State's claims for alleged PFAS contamination at the Rutland City landfill relate to 3M's manufacture of MilSpec products at the Rutland Facility for use by the federal government, 3M is entitled to remove this action to federal court based on federal officer jurisdiction. Under the federal "government contractor" defense recognized by the U.S. Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), the State is precluded from establishing tort liability for the design and manufacture of copper-clad laminates pursuant to military specifications and for 3M's provision of warnings related to the products. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M therefore is entitled to remove this action to have that federal defense adjudicated in a federal forum.

7.      Further, because the State has never in any pleading in this case or other paper in this case apprised 3M that the State's claims for alleged PFAS contamination relate to actions at the Rutland Facility for which 3M has a federal defense, 3M's notice of removal is timely. *See Cutrone*, 749 F.3d at 143. 3M is entitled to remove this action now based on the results of its own recent investigation into the manufacture of products at the Rutland Facility and the Rutland Facility's purported connection, asserted by the State, with alleged PFAS contamination at the Rutland City landfill for which the State confirmed in its December 18, 2023 RFA response that it is seeking damages in this case. *See id.* at 148 (holding that where, as here, a plaintiff's pleadings and other papers in a case do not trigger the 30-day periods of 28 U.S.C. §§ 1446(b)(1) and (b)(3), "a defendant may remove a case when, upon its own independent investigation, it determines that the case is removable").

## BACKGROUND

8.     On June 26, 2019, the State filed this action in the Chittenden Superior Court of the State of Vermont, where it was assigned Docket No. 547-6-19 Cncv. The operative Second Amended Complaint ("SAC") is attached as Exhibit 1.

9.     The State brings this action to hold 3M and other Defendants liable for alleged PFAS contamination in Vermont, including contamination with PFOA and other PFAS chemicals. *See, e.g.*, SAC ¶¶ 1-3, 9-12, 71-86. The State generally alleges that Defendants, including 3M, have designed, manufactured, marketed, distributed, and/or sold PFAS and PFAS-containing products, including in Vermont. *See, e.g., id.* ¶¶ 4-8, 18-34. The State further alleges that Defendants' PFAS have been released in Vermont and have caused contamination of the State's natural resources and property. *See, e.g., id.* ¶¶ 87-88, 246-289. According to the State, PFAS was released at landfills, among other sites. *See, e.g., id.* ¶¶ 57, 247.

10.     The SAC pleads nine causes of action against 3M and other Defendants including for: Civil Action for Natural Resource Damages and Restoration (*id.*, First Cause of Action); Groundwater Protection Act, 10 V.S.A. § 1410 (*id.*, Second Cause of Action); Strict Liability for Design Defect and/or Defective Product (*id.*, Third Cause of Action); Strict Liability for Failure to Warn (*id.*, Fourth Cause of Action); Negligence (*id.*, Fifth Cause of Action); Public Nuisance (*id.*, Sixth Cause of Action); Private Nuisance (*id.*, Seventh Cause of Action); Trespass (*id.*, Eighth Cause of Action); and 10 V.S.A. § 6615(a)(5) (*id.*, Ninth Cause of Action).[2] The State seeks to hold 3M and other Defendants liable for injury to the State's natural resources, and among other

---

[2] On May 28, 2020, the state court dismissed the First Cause of Action. In addition to the claims against 3M, the SAC also asserts claims for actual and constructive fraudulent transfer against Defendants other than 3M. *See* SAC, Tenth through Fifteenth Causes of Action.

relief, requests compensatory damages (including natural resource damages) and punitive damages. *Id.* at pp. 97-99.

11.     In discovery in state court, the State identified the Rutland City landfill in response to an interrogatory from 3M asking the State to "[i]dentify every location in Vermont where any PFAS chemical has been found in Groundwater." Pl. State of Vermont's Eighth Suppl. Resp. & Objs. To 3M Co.'s First Set of Interrogs. 18, 20 (Oct. 4, 2023) (Exhibit 2). The State did not clearly assert at the time that it was bringing a claim for alleged PFAS contamination at the Rutland City landfill, nor did it identify any claimed source for the PFAS allegedly found in groundwater at the Rutland City landfill. The State did not contend that any alleged conduct by 3M at the Rutland Facility related to PFAS at the Rutland City landfill, and no pleading in this case to date contains such allegations, so 3M had no obligation to remove this case at any earlier time.

12.     On October 23, 2023—separate from this litigation—the State of Vermont Department of Environmental Conservation, Waste Management & Prevention Division ("WMPD"), sent a letter regarding the Rutland Facility to 3M and Isovolta (the apparent current owner of the Rutland Facility). *See* Letter from Matt Chapman, Director, WMPD, to Kevin Rhodes, 3M (Oct. 23, 2023) ("6615 Letter") (Exhibit 3). According to the 6615 Letter, WMPD allegedly learned that 3M formerly owned the Rutland Facility; that PFAS may have been manufactured or used there during that time; that waste materials from the Rutland Facility during that time were transported to the Rutland City landfill; and that PFAS has adversely impacted the groundwater at the Rutland City landfill. *Id.*[3] Citing 10 V.S.A. § 6615, the 6615 Letter stated that

---

[3] 3M understands that testing for PFAS at the Rutland Facility conducted by or at the direction of the State has not detected PFAS. *See* Vermont Drinking Water/Groundwater Database Search–PFAS Data, Isovolta, Inc. (accessed Dec. 27, 2023), https://anrweb.vt.gov/DEC/DWGWP/license.aspx?sWSID=VT0020399&TYPE=PFASDataSystem.

3M is a "potentially responsible party" and it directed 3M "to conduct an environmental investigation at this site to characterize the threatened release from this property." *Id.*[4] Following receipt of the 6615 Letter, based on 3M's investigation, 3M was able to determine that when it owned and operated the Rutland Facility, it manufactured (among other products) copper-clad laminates produced in accordance with MilSpec requirements. *See infra* ¶¶ 24-28.

13.     On December 18, 2023, the State denied 3M's Request To Admit No. 74: "Admit that the State is not seeking relief in this lawsuit for any claimed contamination or injury from PFAS to groundwater at Rutland City landfill." Pl. State of Vermont's Resp. & Objs. To 3M Co.'s Requests For Admission at 48 (Dec. 18, 2023) ("RFA Resp.") (Exhibit 4); *see also* Pl. State of Vermont's Resp. & Obj. to 3M Co.'s Second Set of Interrogs. at 48-49 (Dec. 18, 2023) (Exhibit 5). That was the first time that the State clearly asserted that it is bringing a claim in this lawsuit seeking relief for alleged contamination or injury from PFAS at the Rutland City landfill, including costs of investigation, removal, and remedial actions.

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL UNDER 28 U.S.C. §§ 1441 AND 1446 ARE MET

14.     Venue for the removal of this action is proper in this Court pursuant to 28 U.S.C. §§ 126 and 1441(a) because the Chittenden Superior Court of the State of Vermont is located within the District of Vermont.

15.     3M is not required to notify or obtain the consent of any other Defendant in this action in order to remove the State's action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden v. Chase Manhattan Corp.*,

---

[4] 3M responded to the State's letter on November 10, 2023. To date, 3M has not received a further response from the State.

No. 99 Civ. 3970(LLS), 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994).

16.     Pursuant to 28 U.S.C. § 1446(a) and L.R. 81, the state-court file will be transmitted to this Court pursuant to L.R. 81(b).

17.     Pursuant to 28 U.S.C. § 1446(d), 3M is serving a copy of this Notice of Removal upon all other parties to this case and is filing a copy with the Clerk of the Chittenden Superior Court of the State of Vermont.

18.     If any question arises as to the propriety of the removal of this action, 3M requests the opportunity to present a brief and oral argument in support of removal.

## THIS NOTICE OF REMOVAL IS TIMELY FILED

19.     3M's removal of this action is timely under 28 U.S.C. § 1446(b). During the time that this case has been pending, the State has never "provide[d] facts explicitly establishing removability or allege[d] sufficient information for the defendant to ascertain removability." *Cutrone*, 749 F.3d at 145. Specifically, even though the State has identified the Rutland City landfill as a site for which it is asserting claims in this case (and the 6615 Letter separately from this case recently identified 3M as a potentially responsible party in connection with PFAS from the Rutland Facility), neither the State's pleadings nor its discovery responses in this case have expressly mentioned the former 3M Rutland Facility as the basis for any claim asserted by the State in this litigation. Nor has the State in either its pleadings or discovery responses in this case referenced 3M's manufacture of any products at the Rutland Facility, let alone explicitly and affirmatively linked 3M's manufacture of products at or disposal of waste from the Rutland Facility to the alleged presence of PFAS at the Rutland City landfill or elsewhere in Vermont. Further, it was based on 3M's investigation that 3M was able to determine that when it owned and

8

operated the Rutland Facility, it manufactured copper-clad laminates produced in accordance with MilSpec requirements.

20.     As discussed *infra* ¶¶ 21-44, 3M has a sufficient basis to remove the case at this time, and because the State has done nothing to trigger the 30-day removal clocks under 28 U.S.C. § 1446(b), 3M's removal of this case is timely. "[D]efendants have no independent duty to investigate whether a case is removable." *Cutrone*, 749 F.3d at 143. "If removability is not apparent from the allegations of an initial pleading or subsequent document, the 30–day clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not triggered." *Id.* "Section 1446(b) imposes a time limit *only* in cases in which the plaintiff's initial pleading or subsequent document has explicitly demonstrated removability. Defendants are permitted to remove outside of these periods when the time limits of 28 U.S.C. § 1446(b) are not triggered." *Id.* at 147. Under Second Circuit law, because the State has done nothing to trigger those time limits, 3M is permitted to remove this case now, and thus this Notice of Removal is timely filed.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)

21.     Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action for or relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its actions taken pursuant to a federal officer's direction have a nexus with plaintiff's claims or injuries or are otherwise related to the lawsuit; and (d) it can assert a "colorable" federal defense. *See Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 133-35 (1989); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008); *see also* 28 U.S.C.

§ 1442(a)(1) (providing for the removal of actions against the United States and its agencies and officers when the actions are "for or relating to any act under color of such office").

22.     Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). To the contrary, "the statute as a whole must be liberally construed" in favor of removal. *Isaacson*, 517 F.3d at 136.

23.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's alleged injuries are at least in part caused by and/or related to manufacture of products pursuant to a specification issued by the military. *See, e.g.*, *Cuomo v. Crane Co.*, 771 F.3d 113, 115-117 (2d Cir. 2014); *Ramey v. Martin-Baker Aircraft Co.*, 874 F.2d 946, 950 (4th Cir. 1989). For instance, courts have upheld federal officer removal of lawsuits for damages from use of PFAS-containing aqueous film-forming foams ("AFFF") that were manufactured pursuant to a MilSpec requiring the use of PFAS. *See, e.g.*, *Aqueous Film-Forming Foams ("AFFF") Prods. Liab. Litig.*, No. 2:18-mn-02873, 2019 WL 2807266, at *2-3 (D.S.C. May 24, 2019) (holding that manufacturers of MilSpec AFFF properly removed State of New York's AFFF lawsuit based on federal officer removal statute); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145, at *7-15 (E.D.N.Y. Sept. 30, 2018) (holding that MilSpec

10

AFFF manufacturers acted under color of federal office in producing PFAS-containing AFFF and could assert a colorable government contractor defense). Courts also have held that the requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's claimed injuries plausibly are at least in part caused by and/or related to the disposal of waste related to products manufactured at the direction of the federal government. *See, e.g., Illinois ex rel. Raoul v. Monsanto Co.*, No. 22 C 5339, 2023 WL 130525, at \*3-4 (N.D. Ill. Jan. 9, 2023); *N.J. Dep't of Env't Prot. v. E.I. Du Pont de Nemours & Co.,* No. 1:19-cv-14765, 2020 WL 2611539, at \*4-5 (D.N.J. May 22, 2020). This case is properly removed to this Court.

## A.   MIL-P-13949.

24.   From 1955 through November 1998, the U.S. military issued, revised, and updated a MilSpec, MIL-P-13949, that established requirements for the manufacture of certain metal-clad laminates.[5] The laminates are used in making wiring boards for electrical and electronic circuits.[6] These products have a range of mission-critical military applications in electronic military and defense devices and systems. The MilSpec includes numerous rigorous requirements for the design of metal-clad laminates and for their physical properties.[7]

25.   All metal-clad laminates purchased for use by the U.S. military under MIL-P-13949 had to be qualified for listing on an applicable "qualified products list" prior to military procurement.[8] Prior to listing on a qualified products list, a "manufacturer's . . . products are

---

[5] *See, e.g.*, Mil-P-13949E (July 15, 1971) (Exhibit 6). (MIL-P-13949 was renamed MIL-S-13949 when it was revised in 1993.)

[6] MIL-P-13949E § 1.1.

[7] *Id.* §§ 3.3-3.18.

[8] *Id.* §§ 3.2, 6.3.

11

examined, tested, and approved to be in conformance with specification requirements."[9] With respect to the copper-clad laminates, the MilSpec designates the U.S. Army–Electronics Command as the agency responsible for applying these criteria and determining whether products satisfy the MilSpec's requirements.[10] The "Government reserves the right to perform any of the inspections set forth in the specification where such inspections are deemed necessary to assure supplies and services conform to prescribed requirements."[11]

26.     Some versions of MIL-P-13949 included the express requirement that certain metal-clad laminates contain PFAS. The 1971 version of the MilSpec—which was in effect when 3M manufactured copper-clad laminates under the MilSpec at the Rutland Facility—specifies that all MilSpec metal-clad laminates to be used "for microwave application" must contain "polytetrafluoroethylene resin," a PTFE product.[12] PTFE is a PFAS according to the State and has been used in numerous applications. Other PFAS chemicals, including PFOA, have historically been used in the process of manufacturing PTFE.

27.     The Department of Defense has acknowledged that even today, "PFAS remain key industrial materials in . . . printed circuit boards. PTFE . . . base laminate materials are currently used in many . . . microwave circuits, as they provide unique properties related to isolating RF [radio frequency] and microwave signals. . . . There currently are no available drop-in replacement materials for a PTFE designed printed board." Dep't of Defense, Report on Critical Per- and

---

[9] DOD, SD-6, Provisions Governing Qualification at 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[10] *See* MIL-P-13949E at p. 37 (Exhibit 6). The MilSpec designates "Army–EL" as the "Preparing Activity." The "Preparing Activity" is responsible for qualification. (*See* DOD SD-6, *supra* note 9, at 3.)

[11] MIL-P-13949E § 4.1 (Exhibit 6).

[12] *Id.* § 1.2.1.2.

Polyfluoroalkyl Substance Uses at 7 (Aug. 2023), *available at* https://www.acq.osd.mil/eie/eer/ecc/pfas/docs/reports/Report-on-Critical-PFAS-Substance-Uses.pdf.

**B.    The Alleged Contamination Plausibly Derives From MilSpec Products.**

28.    Following receipt of the 6615 Letter, 3M learned that when it owned and operated the Rutland Facility, it manufactured (among other products) PFAS-containing copper-clad laminates that were produced in accordance with the requirements of MIL-P-13949. Specifically, from around 1973 to 1975, 3M manufactured copper-clad laminates at the Rutland Facility for use by the federal government. At that time, MIL-P-13949 expressly called for PTFE to be used in manufacturing metal-clad laminates for microwave applications. MIL-P-13949E § 1.2.1.2 (1971) (Exhibit 6). During that time, the PTFE used by 3M pursuant to MIL-P-13949 at the Rutland Facility likely would have been manufactured using PFOA.

29.    According to the 6615 Letter—which the State sent 3M separate from this litigation to identify 3M as a "potentially responsible party" and to call on 3M to perform an investigation relating to the Rutland Facility—PFAS-containing waste from the Rutland Facility may have been transported to the Rutland City landfill. *See* 6615 Letter (Exhibit 3). The 6615 Letter indicates that, according to the State, there may be a connection between PFAS or PFAS-containing products used at the Rutland Facility and waste transported to the Rutland City landfill where PFAS has been detected. *See id.* Based on what 3M has learned, any such waste plausibly may have contained PFAS related to the manufacture of PTFE-containing MilSpec copper-clad laminates in accordance with MIL-P-13949's requirement that the products be made using PTFE.

30.    The Rutland City landfill is one of the PFAS sites that the State has now put at issue in this case, claiming that PFAS has impacted groundwater at the landfill. *See* RFA Resp. 48 (Exhibit 4). The State's claims to recover damages from 3M for alleged PFAS contamination in this case thus plausibly encompass claims the State makes to recover for PFAS at the Rutland City

landfill that derived from 3M's manufacture of products at the Rutland Facility conforming to MilSpec requirements for PTFE-containing metal-clad laminates.

31.     Because the State's claims in this case plausibly arise, at least in part, from manufacture and/or disposal of MilSpec products that were required to contain PFAS, 3M is entitled to remove this case as a whole under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). As shown below, all the elements of federal officer jurisdiction are met when a plaintiff asserts claims based on alleged contamination that is at least in part caused by and/or related to MilSpec products.

### C.     All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied.

#### 1.     The "Person" Requirement Is Satisfied.

32.     The first requirement for removal under the federal officer removal statute is satisfied here because 3M (a corporation) meets the definition of a "person" under the statute. For purposes of § 1442(a)(1), the term "person" includes corporations. *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); *accord Isaacson*, 517 F.3d at 135-36.

#### 2.     The "Acting Under" Requirement Is Satisfied.

33.     The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *See Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 152 (2007); *Isaacson*, 517 F.3d at 137. "The words 'acting under' are to be interpreted broadly." *Isaacson*, 517 F.3d at 136. Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813. "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017).

14

34.     The requirement of "acting under" a federal officer is met here because the alleged PFAS contamination for which the State seeks to recover from 3M stems at least in part from products manufactured in accordance with a MilSpec that required the use of PFAS. The MilSpec copper-clad laminates produced by 3M at the Rutland Facility were used for a range of critical military applications. *See supra* ¶ 24. If 3M had not provided them, "the Government would have had to produce [them] itself." *Isaacson*, 517 F.3d at 137.

35.     In designing, manufacturing, and supplying PTFE-containing copper-clad laminates, 3M acted under the direction and control of one or more federal officers. Specifically, 3M acted in accordance with detailed specifications issued by the U.S. military governing the design of metal-clad laminates that, at the time, expressly called for the use of PTFE. MIL-P-13949E § 1.2.1.2 (1971) (Exhibit 6). Further, those products were subject to various tests by the U.S. Army before and after being approved for use by the military and for inclusion on the Department of Defense's qualified products list.[13] 3M has satisfied the "acting under" requirement.

### 3.     The "Under Color Of Federal Office" Requirement Is Satisfied.

36.     The third requirement, that the defendant's actions were taken "under color of federal office," requires a "nexus" between plaintiff's claims and the defendant's acts undertaken at the direction of a federal officer. As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137. It is sufficient for a defendant to establish a connection or association between the lawsuit and the federal office. *See Moore v. Elec. Boat Corp.*, 25 F.4th 30, 35-36 (1st Cir. 2022) (explaining that 28 U.S.C. § 1442 permits removal of actions "for *or relating to* any act under color of [federal] office" (citing Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545)); *accord Sawyer*, 860 F.3d at 258; *Papp*, 842 F.3d

---

[13] *See* DOD, SD-6, *supra* note 9, at 1.

at 813; *Isaacson*, 517 F.3d at 137-38 (holding that it is sufficient if the act that allegedly caused the plaintiff's injuries occurred while the defendant was performing its official duties).[14]

37.    Courts "credit Defendants' theory of the case" when determining whether the requisite connection exists. *Isaacson*, 517 F.3d at 137. Here, the State's claims in this case relating to the Rutland City landfill plausibly arise at least in part from alleged PFAS waste that derived from manufacture of products for which the applicable MilSpec required the use of PFAS to meet the Government's needs. *See supra* ¶¶ 24-31. As a result, the State's claims against 3M are "for or relating to" 3M's acts taken under color of federal office. 28 U.S.C. § 1442(a)(1). *See, e.g.,* *Albritton v. A Clemente, Inc.*, No. 1:22-cv-00397, 2023 WL 2447422, at *6 (D.N.J. Mar. 10, 2023) (holding that claims against DuPont to recover for alleged PFAS contamination resulting from waste disposals connected to manufacture of products for the government during World War II sufficiently related to DuPont's acts under federal office); *Monsanto Co.*, 2023 WL 130525, at *3 (holding that claims to recover for alleged contamination resulting from waste disposals connected to manufacture of products pursuant to military specifications were sufficiently related to acts under color of federal office because Congress's 2011 amendment of § 1442(a)(1) "broadened the federal officer removal statute to include actions 'not just causally connected, but alternatively connected or associated with acts under color of federal office'" (quoting *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 943 (7th Cir. 2020))).

---

[14] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications." *Albrecht*, 2011 WL 5109532, at *5.

### 4. *The "Colorable Federal Defense" Requirement Is Satisfied.*

38.     The fourth requirement ("colorable federal defense") is satisfied by 3M's assertion

of the government contractor defense. The Second Circuit has repeatedly held that this defense

supports removal under § 1442(a)(1). *See Isaacson*, 517 F.3d at 139; *Cuomo*, 771 F.3d at 116.

39.     At the removal stage, a defendant need only show that its government contractor

defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted.'"

*Papp*, 842 F.3d at 815. "To be 'colorable,' the defense need not be 'clearly sustainable,' as the

purpose of the statute is to secure that the validity of the defense will be tried in federal court."

*Isaacson*, 517 F.3d at 139. At the removal stage, the inquiry "is purely jurisdictional, and neither

the parties nor the district courts should be required to engage in fact-intensive motion practice,

pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116.[15]

Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to

Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010).

"Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's

defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal,

not a state, court.'" *Cuomo*, 771 F.3d at 116 (quoting *Willingham*, 395 U.S. at 409).

40.     Under the government contractor defense, a defendant is not liable for acts related

to the design and manufacture of equipment or supplies, or the provision of warnings concerning

such equipment or supplies, "when (1) the United States approved reasonably precise

specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned

---

[15] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not determine credibility, weigh the quantum of evidence or discredit the source of the defense at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal quotation marks omitted)).

the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

41.     3M satisfies these elements for purposes of removal. As discussed above, the U.S. military approved reasonably precise specifications governing the design and performance of metal-clad laminates, including the express specification that metal-clad laminates for microwave applications contain PTFE (which is a PFAS chemical, according to the State, and has been manufactured using PFAS chemicals, historically including PFOA).[16] Moreover, 3M could not have sold the product for use by the government unless the products appeared on a qualified product list, and that can only have happened if the U.S. military determined that the products conformed to the MilSpec.[17] *See, e.g., Ayo*, 2018 WL 4781145, at *13 (finding that AFFF manufacturers demonstrated a colorable defense when there was "colorable evidence" that the MilSpec was a reasonably precise specification requiring PFAS to be used in AFFF products, and that the products conformed to the government's specifications); *Monsanto Co.*, 2023 WL 130525, at *4 (finding that defendants had asserted a colorable government contractor defense sufficient for federal officer removal because "[t]heir disposal of the waste products is connected to the manufacture of the government's required product," and "[f]or a federal defense to be colorable, it need only be plausible").

42.     The U.S. government also was sufficiently informed regarding any alleged PFAS-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring PTFE-containing copper-clad laminates from 3M. To the extent that the State alleges that PFOA and other PFAS for which it seeks to recover from 3M pose risks to the environment

---

[16] MIL-P-13949E § 1.2.1.2 (Exhibit 6).

[17] *See* Dep't of Defense SD-6, *supra* note 9, at 1.

and human health, *see, e.g.*, SAC ¶¶ 38-52, the United States has long been aware of such alleged potential risks of PFAS. For example, by the early 1970s, the United States was aware that PFAS were potentially toxic to marine life, were persistent in the environment, and could migrate to impact groundwater. *See* Air Force Weapons Lab'y, *Treatability of Aqueous Film-Forming Foams Used For Fire-Fighting* (Feb. 1974) (Air Force study of the toxicity and non-biodegradability of PFAS-containing AFFF making recommendations regarding disposal of AFFF wastewater to reduce environmental impact).[18] The government also was aware before the 1970s of the properties of PTFE and its manufacturing process, including the use of PFOA in its manufacture: the government itself used PTFE during the Manhattan Project in the 1940s and subsequently approved patents for PTFE (which described the use of PFOA in the manufacture of PTFE). *See* U.S. Patent No. 2,559,752 (filed Mar. 6, 1951; published July 10, 1951); U.S. Patent No. 3,037,953 (filed Apr. 26, 1961; published June 5, 1962). The government's awareness of alleged properties and potential risks of PFAS at the relevant time and thereafter is enough for a colorable showing of the third *Boyle* element. *See, e.g.*, *AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials . . . in which the [DOD] acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . ."); *Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where the government knew as much or more than the defendant contractor about the hazards of the product." (internal quotation marks omitted)); *Albritton*, 2023 WL 2447422, at *8 (holding that

---

[18] Excerpt available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873 (D.S.C.), ECF No. 1968-5; *see generally* No. 2:18-mn-02873 (D.S.C.), ECF Nos. 1965-1, 2347.

defendant asserted colorable government contractor defense for clams related to disposal of product manufactured pursuant to federal government specifications and contracts).

43.    At a minimum, these facts constitute colorable evidence that the U.S. military "made a discretionary determination" regarding the specification of PTFE-containing metal-clad laminates to weigh the benefits against the alleged risks of its manufacture, use, handling, and/or disposal based on its knowledge at the time. That determination has been confirmed by the military's continued use of the PTFE-containing products even today (decades after 3M sold the Rutland Facility) when the State itself claims that the alleged risks from PFAS are well established. *See In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 90, 95-96 (2d Cir. 2008) (holding that the government "made a discretionary determination" regarding product specification when it "continued to order Agent Orange after having evaluated its toxicity levels and declared them acceptable"); *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."). When the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re Agent Orange*, 517 F.3d at 89-90; *see also Ayo*, 2018 WL 4781145, at *13. The government here has determined that the benefits of certain PTFE-based products outweigh any potential environmental and health risks, and in fact the government continues to use PTFE to make laminates for microwave applications to this day. *See* Dep't of Defense, Report on Critical Per- and Polyfluoroalkyl Substance Uses at 7 (Aug. 2023), cited *supra* ¶ 27 ("PFAS remain key industrial materials in . . . printed circuit boards," "PTFE . . . base laminate materials are currently used in many . . . microwave circuits," and "[t]here currently are no available drop-in replacement materials for a

PTFE designed printed board."); *id.* at 16 ("Eliminating PFAS from non-essential uses is an important step toward addressing public concerns and protecting human health and the environment. Mission critical PFAS uses provide significant benefits to the framework of U.S. critical infrastructure, and national and economic security."). The government's continued purchase and use of PTFE-based products confirms that 3M can assert a government contractor defense to the State's claims to the extent that they arise from the manufacture of such products at the Rutland Facility.

44.     Accordingly, 3M is entitled to remove this action as a whole to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). When any claim or portion of a claim meets the requirements for removal under § 1442(a)(1), a defendant is entitled to remove the action as whole to federal court. *See, e.g., Moore*, 25 F.4th at 35; *Baker*, 962 F.3d at 945.

WHEREFORE, 3M hereby removes this action from the Chittenden Superior Court of the State of Vermont to this Court pursuant to 28 U.S.C. § 1442(a)(1).

Respectfully submitted,

January 3, 2024

*Ritchie E. Berger/KM*

Ritchie E. Berger, Esq.
Dinse P.C.
209 Battery Street, P.O. Box 988
Burlington, VT 05401
(802) 864-5751
rberger@dinse.com

Michael A. Olsen*
Daniel L. Ring*
Richard F. Bulger*
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
molsen@mayerbrown.com

21

dring@mayerbrown.com
rbulger@mayerbrown.com

*Counsel for Defendant 3M Company*

\*Applications for admission *pro hac vice*
forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2024, I caused a true and correct copy of the foregoing document, with its exhibits, to be served upon the following parties by First Class Mail and/or by Email, as indicated below:

By Mail and Email:

Laura B. Murphy, Esq.
State of Vermont
109 State Street
Montpelier, VT  05609
(802) 828-3186
laura.murphy@vermont.gov

Kyle McGee, Esq.
Viola Vetter, Esq.
Jason Wilson, Esq.
Gordon Novod, Esq.
Frank H. Griffin IV, Esq.
Grant & Eisenhofer P.A.
123 Justison Street
Wilmington, DE 19801
kmcgee@gelaw.com
vvetter@gelaw.com
jwilson@gelaw.com
gnovod@gelaw.com
fgriffin@gelaw.com

Matthew F. Pawa, Esq.
Benjamin A. Krass, Esq.
Nigel Halliday, Esq.
MacKennan Graziano, Esq.
Gillian Cowley, Esq.
Seeger Weiss LLP
1280 Centre Street, Suite 230
Newton Center, MA  02459
(617) 641-9550
mpawa@seegerweiss.com
bkrass@seegerweiss.com
nhalliday@seegerweiss.com
mgraziano@seegerweiss.com
gcowley@seegerweiss.com

By Email:

Katherine Hacker, Esq.
Amy McCalib, Esq.
Bartlit Beck LLP
1801 Wewatta St., Suite 1200
Denver, CO  80202
(303) 592-3141
Kat.hacker@bartlitbeck.com
amy.mccalib@bartlitbeck.com
dupont@bartlitbeck.com

Timothy C. Doherty, Jr., Esq.
Kelsey Schweitzer, Esq.
Downs Rachlin Martin PLLC
199 Main Street
P.O. Box 190
Burlington, VT  05402-0190
tdoherty@drm.com
kschweitzer@drm.com

Richard F. Bulger, Esq.
Michael A. Olsen, Esq.
Daniel L. Ring, Esq.
Tyler D. Alfermann, Esq.
Daniel Rottenberg, Esq.
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
rbulger@mayerbrown.com
molsen@mayerbrown.com
dring@mayerbrown.com
talfermann@mayerbrown.com
drottenberg@mayerbrown.com
PFAS_Pleadings@zestediscovery.com

Cynthia Betz, Esq.
Lanny Kurzweil, Esq.
Ryan Richman, Esq.
Candee Wilde, Esq.
McCarter & English LLP
100 Mulberry Street
4 Gateway Center
Newark, NJ 07102
(973) 639-7984
cbetz@mccarter.com
lkurzweil@mccarter.com
rrichman@mccarter.com
cwilde@mccarter.com

Adam L. Hoeflich, Esq.
Bartlit Beck LLP
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4473
Adam.hoeflich@bartlit-beck.com
DuPont-PFOA-Bartlitbeck.com@bartlit-beck.com

Margaret Raymond Flood, Esq.
Martha N. Donovan, Esq.
Kimbrilee M. Weber, Esq.
Norris McLaughlin
400 Crossing Blvd.
8th Floor, P.O. Box 5933
Bridgewater, NJ 08807
(908) 252-4228
mraymondflood@norris-law.com
mdonovan@norris-law.com
kmweber@norris-law.com

Gregory A. Weimer, Esq.
Kirkpatrick & Goldsborough, PLLC
1233 Shelburne Rd., Ste. E-1
Lakewood Commons
South Burlington, VT 05403
(802) 651-0960
gweimer@vtlawfirm.com

Randall L. Christian, Esq.
Bowman and Brooke LLP
2901 Via Fortuna Drive, Suite 500
Austin, Texas, 78746
randall.christian@bowmanandbrooke.com

Heather E. Ross, Esq.
Sheehey, Furlong & Behm P.C.
30 Main St., 6th Floor
P.O. Box 66
Burlington, VT 05402
(802) 864-9891
hross@sheeheyvt.com

Shayna S. Cook, Esq.
Laura A. Sexton, Esq.
Goldman Ismail Tomaselli Brennan & Baum LLP
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606
scook@goldmanismail.com
lsexton@goldmanismail.com

2

Tracie J. Renfroe, Esq.  
Oliver P. Thoma, Esq.  
King & Spalding LLP  
1100 Louisiana Street, Suite 4100  
Houston, TX 77002  
trenfroe@kslaw.com  
othoma@kslaw.com  

Matthew J. Blaschke, Esq.  
King & Spalding LLP  
50 California Street, Suite 3300  
San Francisco, CA 94111  
mblaschke@kslaw.com  

By: *Ritchie E. Berger /REB*

Ritchie E. Berger, Esq.  
Dinse P.C.  
209 Battery Street, P.O. Box 988  
Burlington, VT 05401  
(802) 864-5751  
rberger@dinse.com  

3