```
                       UNITED STATES DISTRICT COURT
                               FOR THE
                         DISTRICT OF VERMONT

STATE OF VERMONT,                     :
                                      :
        Plaintiff,                    :
                                      :
v.                                    :    Case No. 2:24-cv-19
                                      :
3M COMPANY, E. I. DU PONT DE          :
NEMOURS AND COMPANY, THE CHEMOURS     :
COMPANY, THE CHEMOURS COMPANY FC,     :
LLC, CORTEVA, INC., and DUPONT DE     :
NEMOURS, INC.,                        :
                                      :
        Defendants.                   :
```

## OPINION AND ORDER

### I. Introduction

Plaintiff State of Vermont ("the State") filed this lawsuit against Defendants ("3M"), chemical manufacturers, in Vermont Superior Court in 2019 alleging that 3M's production of per- and polyfluoroalkyl substances ("PFAS") contaminated the State's natural resources. After nearly four years of discovery, 3M filed a notice of removal to this Court stating that it "recently learned that the State's claims for alleged PFAS contamination at the Rutland City landfill are subject to federal officer jurisdiction." ECF No. 1 at 2. The State opposes removal as untimely under the federal removal statute, 28 U.S.C. § 1446(b)(3). For the following reasons, the Court **grants** the

State's motion to remand the case to Vermont Superior Court. ECF No. 10.

## II.  Factual and Procedural Background

In June of 2019, the State filed two lawsuits against 3M and several other manufacturers. One dealt with contamination related to PFAS and the other with aqueous film forming foam ("AFFF"). The State alleges that both products are toxic. 3M removed the AFFF case to federal court under federal officer jurisdiction, claiming that it manufactured AFFF under military specifications ("MilSpecs"). *See* ECF No. 15 at 8. The State did not oppose removal of that case, which is currently part of multidistrict litigation in the District of South Carolina. *See* ECF No. 2:19-cv-02281 (D.S.C.); ECF No. 2:19-cv-134 (D. Vt.) (pre-transfer District of Vermont docket).

This is the PFAS case, which explicitly disclaims any recovery for AFFF products. *See* ECF No. 1-2 at 6 (Second Amended Complaint stating that the State is addressing AFFF-related injuries through a separate action). The State submits that this lawsuit deals with "hundreds of consumer and industrial products that are not used in firefighting foam and that have caused the majority of the State's PFAS contamination." ECF No. 10 at 6. It alleges that 3M manufactured PFAS and related substances in Vermont beginning in the 1940s, "marketed and sold those products nationally in Vermont, and caused PFAS contamination at

2

locations throughout Vermont, including at landfills." *Id.* 3M allegedly knew by the 1960s that PFAS chemicals were toxic and would escape into the environment. *Id.* The State "strongly desire[s] to litigate" this matter in its own courts. *Id.*

The parties engaged in nearly four years of discovery, much of which dealt with where 3M allegedly contaminated while producing PFAS in Vermont. The parties agree that the State has long alleged that 3M contaminated at the Rutland City landfill. *See* ECF No. 15 at 8 (3M's response to the State's motion for remand stating "[d]uring fact discovery, the State identified numerous sites where it alleges that it has detected PFAS . . . [including] the 'Rutland City landfill.'"); ECF No. 10 at 7. They also agree that on July 21, 2023, 3M disclosed that it "formerly owned and operated a PFAS-product manufacturing facility in Rutland," which the Court will call "the Rutland Facility." ECF No. 10 at 8; ECF No. 15 at 9.

On October 4, 2023, 3M completed its production of documents regarding the Rutland Facility. These documents revealed that 3M manufactured "copper clad laminates" used for microwave strip lines at the Rutland Facility from 1955 through 1975. ECF No. 10 at 9. One of those documents — apparently a 3M press release — indicates that "until the early 1970s microwave industry output was concentrated primarily in military markets." ECF No. 10-21 at 2. Other documents related to the Rutland

3

Facility revealed that waste from the Facility was deposited at the Rutland City landfill. ECF No. 10-(23-25).

On October 23, 2023, after learning of the Rutland Facility and its production of products using PFAS, the Vermont Department of Environmental Conservation ("DEC") contacted 3M to notify it of its status as a "potentially responsible party" and asserted 3M's obligation to "conduct an environmental investigation at this site." ECF No. 10-27 at 3; ECF No. 10-26 at 3 (declaration from DEC officer stating that this notice was based entirely on documents produced for this litigation). On November 2, 2023, the State's counsel in this case forwarded that notice to 3M's counsel. ECF No. 10-27 at 2.

In September of 2023, 3M requested the State admit that it was "not seeking relief in this lawsuit for any claimed contamination or injury from PFAS to groundwater at Rutland City landfill." ECF No. 10 at 10-11. On December 18, 2023, the State denied that request (and therefore indicated that it was seeking relief related to contamination at the Rutland landfill). On January 3, 2024, 3M removed the case, claiming that this admission by the State put it on notice that the State was seeking relief for contamination at the Rutland landfill. ECF No. 1 at 1; 7 (stating that the State's December admission was "the first time that the State clearly asserted that it is bringing a claim in this lawsuit seeking relief from alleged

4

contamination or injury from PFAS at the Rutland City landfill"). It also asserted that it only discovered that the Rutland Facility made products pursuant to military specifications – therefore making this case removable – upon investigating the State's DEC notice. ECF No. 1 at 2-3.

According to the state court schedule, fact discovery in this case was set to close on March 4, 2024. The matter has been on track for a trial-ready date in March, 2025. Pending before the Court is the State's motion to remand. ECF No. 10.

### III. Discussion

#### A. Legal Standard

When a plaintiff files a lawsuit in state court, a defendant may file a notice of removal to federal court if certain threshold requirements are met. *Abbo-Bradley v. City of Niagara Falls*, 73 F.4th 143, 146 (2d Cir. 2023). Because federal courts are courts of limited jurisdiction, they may exercise jurisdiction only when "authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 552 (2005). One such congressional authorization is the federal officer removal statute, which provides that a case may be removed to federal court when brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating

5

to any act under color of such office." *See Abbo-Bradley*, 73 F.4th at 146 n.1 (citing 28 U.S.C. § 1442(a)).

Removal is subject to the timeliness limitations outlined in 28 U.S.C. § 1446. Section 1446 generally grants defendants "up to 30 days from receipt of an initial pleading to file a notice of removal." *Id.* (citing 28 U.S.C. § 1446(b)(1)). However, a defendant may "remove a case outside of the ordinary thirty-day window if the basis for removal becomes clear" after "receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Taylor v. Medtronic, Inc.*, 15 F.4th 148, 152-53 (2d Cir. 2021); 28 U.S.C. § 1446(b)(3)). It is well established that "[t]he party asserting federal jurisdiction generally bears the burden of proving that the case is properly in federal court." *Pezzo v. AIR & Liquid Sys. Corp.*, No. 20-CV-10433 (JPO), 2021 WL 2852036, at *2 (S.D.N.Y. July 8, 2021) (citing *Goel v. Ramachandran*, 823 F. Supp. 2d 206, 210 (S.D.N.Y. 2011)).

**B. The 30-Day Clock**

Because 3M filed its notice of removal on January 3, 2024, removal was untimely if it received "an amended pleading, motion, order or other paper" allowing it to ascertain federal officer removability at some point prior to December 4, 2023 (30

6

days prior to removal). 28 U.S.C. § 1446(b)(3)); *see also New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215, 232 (D.N.H. 2023) ("[R]emoval was untimely if 3M could first ascertain the removability of this suit under § 1442(a)(1) more than 30 days [before it removed]."). The Court finds that the State made 3M aware that the Rutland landfill was a subject of this litigation prior to December 4, 2023. It also concludes that 3M knew of the connection between the Rutland Facility and the U.S. military, and that the State notified 3M of the connection between the Rutland Facility and Rutland landfill prior to December 4, 2023, allowing 3M to ascertain removability.

First, 3M knew that the State sought relief from contamination stemming from the Rutland landfill well before December 4, 2023. In a set of interrogatory responses dated February 12, 2021, the State explained that it was "aware of PFAS in groundwater" at a list of locations including the "Rutland City landfill." ECF No. 10-4 at 32. 3M also filed a notice of deposition on July 15, 2022, with an addendum explicitly listing the Rutland City landfill as a site where "PFAS contamination allegedly injured the State's groundwater." ECF No. 10-12 at 22 (cleaned up). 3M then filed another notice of deposition of a Vermont state hazardous site manager on March 14, 2023, stating that she was "most qualified to testify" on subjects including the Rutland City landfill. ECF No. 10-11 at

7

5-6. Considered together, these filings reveal that the State put 3M on notice that the Rutland landfill was at issue in this case well before December 4, 2023.

Second, 3M knew that the Rutland landfill was associated with the Rutland Facility. 3M's response to the State's motion to remand acknowledges that "[b]eginning in July 2023, 3M produced [ ] documents to the State indicating that 3M may have made CCLs at the Rutland facility, and 3M produced other documents separately indicating that waste from the Rutland facility may have been transported to the Rutland landfill." ECF No. 15 at 9; see also ECF Nos. 10-(20-25) (outlining 3M's production of PFAS materials at the Rutland Facility and disposal of waste at the Rutland landfill). On August 22, 2023, the State requested to depose a 3M representative regarding the Rutland Facility including its use of any landfill sites. ECF No. 10-16 at 10. 3M denied that request, and instead referred the State to "responsive documents" on the issue. ECF No. 10-17 at 4. One of those documents – apparently a 3M contract for waste removal from the Rutland Facility – notes that the Rutland Facility used the Rutland landfill to dispose of scrap while 3M owned the Facility. ECF No. 10-23 at 7 ("Contractor will use as the disposal site . . . the Rutland City landfill."); see also ECF No. 10-24; 25 (contract for waste disposal and amendment

8

specifying that the waste would be disposed at the Rutland landfill).[1]

Third, 3M knew that the Rutland Facility made products associated with the military more than 30 days before its notice of removal. One document produced by 3M sometime between July and October 2023[2] is a press release stating that the Rutland Facility was expanding its production of dielectric substrates for the microwave industry, used in microwave strip lines that were "concentrated primarily in military markets." ECF No. 10-21 at 2.

The Court concludes that the 30-day clock began to run on November 2, 2023. At that time, both parties knew (pursuant to 3M's October 4, 2023 production of documents) that the Rutland Facility produced materials for the military and disposed of its scrap material at the Rutland landfill. Therefore, the State's November 2 email to 3M's litigation counsel served to notify 3M

---

[1] While the removal statute seems to require 3M to *receive* – not produce – a document allowing it to ascertain removability in order to trigger the 30-day clock, these documents produced by 3M are relevant to the question of what 3M knew about the Rutland Facility and landfill and whether that could have reasonably allowed it to ascertain removability upon later receipt of a paper from the State. *See* 28 U.S.C. § 1446(b)(3)); ECF No. 15 at 16 n.7 (3M arguing that its own documents produced in discovery could not have triggered the removal clock).

[2] The parties do not specify when this document was produced, *see* ECF No. 10-1 at 2 (not providing a date for exhibit 20), but they seem to agree that it was sometime between July and October 2023. ECF No. 10 at 14; ECF No. 15 at 9 n.2.

that a 3M facility that manufactured products for the military was at issue in the case, making it aware of a basis for removal. ECF No. 10-27 at 2. Contrary to 3M's protestations, ECF No. 15 at 18, the State represented throughout discovery that it was seeking damages from the Rutland City landfill, *see* ECF Nos. 10-4 at 32; ECF No. 10-12 at 22; ECF No. 10-11 at 5-6, and the November 2 email simply clarified that the Rutland Facility was one source of the contamination at the landfill site.[3]

3M responds that its 30-day clock did not begin to run on November 2, 2023 for two primary reasons. First, it argues that the State never served it with "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable" because the November 2 email does not qualify as an "other paper." ECF No. 15 at 19; 28 U.S.C. § 1446(b)(3). The Court disagrees. While there are certainly outer limits on what may be considered an "other paper" sufficient to trigger the removal clock,[4] documents provided to defendants associated with

---

[3] 3M also asserts that the State's earlier interrogatory responses did not present a basis for the case's removability because they did not highlight the connection between the Rutland Facility and the landfill. ECF No. 15 at 17-18. Because the November 2 email unambiguously notified 3M of such a connection, the Court need not evaluate whether the earlier interrogatory responses did so.

[4] The Second Circuit has not directly addressed the question of what may be considered an "other paper" under the removal statute.

10

the removed litigation generally qualify. *See* 14C Wright & Miller, *Federal Practice and Procedure* § 3731 n.43 (4th ed. 2023) (noting that "other paper" is construed expansively) (citing *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 365 (6th Cir. 2015) (holding that a hearing transcript was an "other paper" when it was "involved in" the case being removed)); *Addo v. Globe Life and Acc. Ins. Co.*, 230 F.3d 759, 761-62 (5th Cir. 2000) ("[O]ther paper must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction."); *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir. 1996) ("The 'motion, order or other paper' requirement is broad enough to include any information received by the defendant, 'whether communicated in a formal or informal manner.'").

3M is correct that a document filed in an unrelated regulatory matter would typically not qualify as an "other paper" under the removal statute. But here, the State's counsel specifically forwarded the DEC's regulatory notice to 3M's counsel in this matter, with the state court docket number for this case in the subject line. This put 3M on notice that the information contained in the letter – specifically linking PFAS contamination from the Rutland Facility to the Rutland landfill – was relevant to the instant litigation even if the initial letter was mailed pursuant to an independent Vermont regulatory

11

investigation. Therefore, the letter qualifies as an "other paper" under the federal removal statute.

3M's second objection is that the State's "other paper" did not allow it to "ascertain[] that the case [was]" removable because the November 2 email did not clarify that the Rutland Facility made products pursuant to MilSpecs. ECF No. 15 at 15-17; 28 U.S.C. § 1446(b)(3). 3M further notes that the Second Circuit has explained that "defendants have no independent duty to investigate whether a case is removable," and states that because it discovered the relevant MilSpecs through its own investigation, the 30-day clock was never triggered. ECF No. 15 at 24; *Cutrone v. Mortgage Electronic Registration Systems, Inc.*, 749 F.3d 137, 143 (2d Cir. 2014) (citing *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001)). The removal statute does not specify what information must be included in a plaintiff's paper to trigger the 30-day clock, "or how a defendant should 'ascertain' removability." *Id.* at 143 (citing *Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 36–38 (2d Cir. 2010)). It simply requires that the paper be one "from which it may first be ascertained that the case is one which is . . . removable." 28 U.S.C. § 1446(b)(3). The Second Circuit has explained that a defendant must apply a "reasonable amount of intelligence" when reading that paper. *Cutrone*, 749 F.3d at 145.

3M argues that *Cutrone v. Mortgage Electronic Registration Systems, Inc.* establishes that a defendant's receipt of an "other paper" only triggers the removal clock if it "explicitly" outlines the basis for removal. ECF No. 15 at 12 (citing *Cutrone*, 749 F.3d at 147). This is an overread of *Cutrone*. First, that case dealt specifically with removal of cases under the Class Action Fairness Act, Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified, in part, at 28 U.S.C. § 1332(d)). *Cutrone*, 749 F.3d at 145 ("[I]n CAFA cases, the removal clocks of 28 U.S.C. § 1446(b) are not triggered until the plaintiff serves the defendant with an initial pleading or other document that explicitly specifies the amount of monetary damages sought or sets forth facts from which an amount in controversy in excess of $5,000,000 can be ascertained."). Second, *Cutrone* and its predecessor, *Moltner v. Starbucks Coffee Co.*, 624 F.3d at 36-38, dealt with whether documents that did not accurately specify damages started the removal clock when the barrier to federal jurisdiction was the amount in controversy. Both held that such ambiguous documents did not start the clock, because "[r]equiring a defendant to read the complaint and guess the amount of damages that the plaintiff seeks will create uncertainty and risks increasing the time and money spent on litigation." *Cutrone*, 749 F.3d at 143 (quoting *Moltner*, 624 F.3d at 39). Concern over creating guesswork for defendants is most

13

significant when the relevant information is, like an amount in controversy, squarely within the possession of plaintiffs.

Not so here, where removability turns on Defendants' business practices. As *Cutrone* also explained, the removal clock begins when plaintiffs provide the defendant with "sufficient information for the defendant to ascertain removability." 749 F.3d at 145. Once the State provided 3M with a paper explaining that the Rutland Facility was relevant to the litigation (and both parties knew that the Facility produced products for the military), removability was reasonably ascertainable to 3M. The Court declines to adopt a rule that would trigger the 30-day clock only when plaintiffs present defendants with a filing captioned "this case is removable." Instead, consistent with the language of the removal statute and *Cutrone*, plaintiffs must simply provide defendants with papers that allow them to ascertain removability when applying a "reasonable amount of intelligence." *Id.*

The State did so here. Because 3M knew that the Rutland Facility made military products, it could have ascertained its claimed basis for removability as soon as it received formal notice from the State that there was a link between the Rutland Facility and the Rutland landfill. While it is true that none of the produced documents "include[d] any MilSpecs for products manufactured at the Rutland Facility, or any other indication

14

that the federal government directed 3M to make such products using PFAS," ECF No. 15 at 9, 3M commonly makes products pursuant to military specifications. *See New Hampshire*, 665 F. Supp. 3d at 223 (noting that 3M used MilSpec AFFF at military sites in New Hampshire); ECF No. 2:19-cv-02281 (D.S.C.) (multidistrict litigation related to 3M's MilSpec AFFF). And again, 3M knew that the Rutland Facility made products for the military. Whether those particular products were made pursuant to a MilSpec is information that – by 3M's admission, ECF No. 15 at 4 – was publicly available, and a company like 3M that commonly works with MilSpecs can be expected to be aware of when its products are made to such specifications.[5] Therefore, 3M could have ascertained that the case was removable upon receiving the State's November 2 email, triggering the 30-day clock.

---

[5] Further, several courts in this Circuit have held that defendants are responsible for knowing whether their products are made pursuant to MilSpecs. *See, e.g.*, *Pezzo,* 2021 WL 2852036, at *2 ("Even in the absence of pleadings on the matter, defendants are expected to know whether the equipment they provide to the government is off-the-shelf or made to specification."); *Levy v. A. O. Smith Water Prod. Co.*, No. 12-cv-5152, 2012 WL 2878140, at *2 (S.D.N.Y. July 13, 2012). The Court need not adopt such a rule as a matter of law because 3M had specific cause to know whether its products were made pursuant to a MilSpec, but these cases provide additional support for the idea that 3M should have ascertained removability upon receipt of the November 2 email.

15

The State also argues that 3M's removal was improper because it was not acting under a federal officer or a colorable federal defense, ECF No. 10 at 17, and the PFAS at issue is "an infinitesimal piece of the State's case," ECF No. 10 at 18. Because removal was not timely, the Court need not evaluate these merits arguments.

## IV. Conclusion

The State's November 2, 2023 email was a "paper from which it may [have been] ascertained that the case is" removable. 28 U.S.C. § 1446(b)(3). Because 3M did not file a notice of removal until January 4, 2024, more than 30 days after its receipt of that paper, removal was not timely. *Id.* The case is **remanded** to the Vermont Superior Court.

DATED at Burlington, in the District of Vermont, this 12th day of April, 2024.

/s/ William K. Sessions III
Hon. William K. Sessions III
U.S. District Court Judge
